JUSTICE SCHMIDT, dissenting: This case should have been resolved by a summary order reversing the trial court and remanding for further proceedings. Smith and the plain language of the statute control. A police officer stopped defendant after watching defendant swerve twice across a lane divider line. The roadway was flat and straight. The second swerve took place approximately five seconds after the first. Each time defendant swerved, both right tires crossed the lane divider line. The officer could see space between the lane divider line and defendant’s right tires. Defendant was ticketed for improper lane usage and ultimately charged with aggravated DUI (625 ILCS 5/11 — 501(a)(2) (West 2008)) and aggravated driving while license revoked (625 ILCS 5/6 — 303(d) (West 2008)). After a suppression hearing, the trial court found no probable cause for the traffic stop. The majority affirms. The majority finds comfort in the fact that the officer noted no other violations concerning lane usage, speed limit, turn signals and traffic signals. These observations by the majority are totally irrelevant to the issue of whether the police officer had probable cause to stop the defendant for improper lane usage after the incidents he described. The majority also states, “Thus, the evidence supports finding that after defendant’s two momentary swerves Blouin continued to follow him while defendant, without committing any traffic violation, negotiated (1) the move into the left turn lane, (2) two left turns, and (3) compliance with the laws concerning lane usage, speed limit, turn signals, and traffic signals.” 406 Ill. App. 3d at 211. I am not sure of the import of the majority’s observation here. It seems to be suggesting that the probable cause created by the two swerves over the lane divider somehow evaporated when defendant was able to make several other maneuvers without the officer observing any additional traffic violations. This is some interesting new law with no support in the existing law. The majority should explain how many legal maneuvers or how far a driver must drive after committing a traffic violation without committing another violation before the probable cause disappears. Police officers and prosecutors will undoubtedly want to know this. The fact is, from a legal standpoint, the officer’s failure to note any additional traffic violations after the first two (or first one for that matter) is totally irrelevant to whether the officer had probable cause to stop the defendant for improper lane usage. I will add an experience-based observation that is undoubtedly just as irrelevant as the majority’s observation. Once a police officer has made a determination to stop someone for whatever violation, the officer generally is not looking for other small violations, but is instead watching the driver and also watching and looking for an appropriate place to conduct the traffic stop. He or she is usually not intent upon seeing how many minor traffic violations can be racked up before the stop is effected. Once a decision to stop is made, officers start thinking about their own safety as well as the safety of the public in determining where or how to make the stop. The majority states, “Defendant argues, based on his testimony, that in the area he was driving, Briggs is in poor condition and that he may have been taking evasive action to avoid potholes.” 406 Ill. App. 3d at 209. During defendant’s direct examination by his own attorney, defendant testified as follows: “Q. Can you describe the road conditions on Briggs street as you’re heading northbound from that gas station to Second? A. There are two lanes north, two lanes south in need of repair like many other roads in the Joliet area or probably most of Illinois. Q. Did you notice potholes as you were proceeding northbound on Briggs? A. There were several of them. Q. Did you have to take any evasive action in your pickup truck to avoid driving straight into potholes? A. There is a possibility, yes.” On cross-examination, the defendant was asked whether his tires could have touched or crossed over the centerline a second time. He said he did not believe so, but he thought one time was possible. “Q. Is it possible that it happened twice? A. I don’t believe so. Q. But one time it is possible? A. Well, with the potholes and different things, I — I would imagine that I probably did move towards the center of the road.” Even when coached by his own attorney during direct examination, defendant did not say that he swerved to avoid a pothole. His strongest testimony was that there was a possibility that he swerved to avoid a pothole. The police officer testified that he saw no potholes, did not hit any potholes, and did not need to take evasive action to avoid any potholes while driving behind defendant on Briggs Street. However, even ignoring the officer’s testimony, we have no testimony from defendant that he had to swerve to avoid a pothole or any other obstruction. At best, this testimony by defendant goes to his guilt or innocence of the charge, not to probable cause. The officer testified that when defendant swerved across the lane marker the second time, he decided to stop defendant for improper lane usage. While he was not as concerned with the first swerve, he felt the second swerve indicated a problem with defendant’s ability to drive. This was an absolutely flawless exercise of judgment on the officer’s part. Police officers do not stop every car for every minor traffic violation they see. This is common knowledge. However, the officer decided since defendant swerved partially into the right-hand lane twice within a very short period of time, that there was a problem. In reaching its decision, the majority discusses two pr e-Smith cases: People v. Halsall, 178 Ill. App. 3d 617, 533 N.E.2d 535 (1989), and People v. Albright, 251 Ill. App. 3d 341, 622 N.E.2d 60 (1993). As the majority points out, these cases stood for the proposition that improper lane usage does not occur unless defendant endangers himself, pedestrians, or other vehicles when he makes a move out of his lane of traffic. 406 Ill. App. 3d at 209. The majority concedes that Halsall and Albright are no longer good law in light of Smith. Nonetheless, it states, “The driving in both Halsall and Albright was potentially more dangerous than defendant’s driving in the case before us now.” 406 Ill. App. 3d at 209. Of what possible relevance is a comparison to the defendant’s driving here and the driving of the Halsall and Albright defendants? In Smith, the supreme court specifically rejected defendant’s argument “that a violation of section 11—709(a) does not occur when a motorist momentarily crosses over a lane line, but occurs only when a motorist endangers others while moving from a lane of traffic.” (Emphasis added.) Smith, 172 Ill. 2d at 296. Our supreme court held that, “Once [the officer] saw defendant cross over a lane line and drive in two lanes of traffic, [the officer] had probable cause to arrest defendant for a violation of the Code.” Smith, 172 Ill. 2d at 297. Nonetheless, the majority “[does] not read Smith as holding that any time a motorist veers momentarily and minimally over a lane line he or she is driving in more than one lane of traffic.” 406 Ill. App. 3d at 214. Again, notwithstanding the clear language in Smith, the majority holds “[t]here are too many innocent circumstances that might cause a motorist to momentarily and inadvertently inch across a lane divider to find that such action, without more creates probable cause to arrest.” 406 Ill. App. 3d at 214. I could write a book about that sentence alone without touching the rest of the majority’s result-orientated decision. We are not talking about murder or treason here, we are talking about violations of the traffic code in which the driver’s good intentions and/or inadvertence are irrelevant. The legislature chose for a reason not to make intent an element of a traffic offense. It recognized the obvious: inadvertence kills. The majority then makes an amusing run at distinguishing the case before us from Smith. 406 Ill. App. 3d at 213-16. The Smith defendant wandered across lane lines twice. The supreme court spoke in terms of distance, rather than time. The first time across the lane line, defendant Smith’s tires were at least six inches across the lane divider for a distance of 100 to 150 yards. Smith, 172 Ill. 2d at 293. On the second incident, the supreme court simply states that the officer saw the defendant cross over the lane line dividing the left lane from the right lane by approximately six inches for 150 to 200 yards. Smith, 172 Ill. 2d at 293. We do not know what the speed limit was on the highway being traversed by Smith. Therefore, we cannot be sure how long Smith had his tires across the lane line. Nonetheless, the majority finds that these were “significant” distances. 406 Ill. App. 3d at 213. The majority then goes on to state, “In this case, by Blouin’s own admission, defendant’s tires only slightly crossed the lane divider for mere seconds before defendant continued to operate his vehicle entirely in the left-hand lane of traffic. Instructive and in stark contrast is Smith, where the defendant drove with his wheels straddling the lane dividers by six inches on opposite sides of the street on two separate occasions, effectively driving in three lanes of traffic for approximately 150 yards each time.” 406 Ill. App. 3d at 215. First of all, with respect to the lateral intrusion into the neighboring lane, the Smith tire was six inches over the line. I have no idea how wide the majority thinks a truck tire is, but the officer in this case said he saw a space between the lane divider line and the vehicle’s tire. He did not elaborate as to how much space he saw. Nor did he need to. It would be an unusual tire that was not at least six inches wide itself. Of course, in any normal vehicle, parts of the vehicle body extend beyond the outside of the tire. Clearly, parts of the defendant’s vehicle had to have been well over six inches beyond the line. This would be true had the defendant been riding a motorcycle, let alone a motor vehicle. In fact, the testimony was that defendant was driving a pickup truck. Secondly, with respect to the distance traveled forward while straddling the lane line, the majority points out that defendant here was over the line for “mere seconds” each time he crossed the lane divider. 406 Ill. App. 3d at 215. In a mere second, a vehicle traveling 30 miles per hour travels approximately 45 feet, one traveling 40 miles per hour travels approximately 60 feet, and one traveling 60 miles per hour travels approximately 90 feet. If the vehicle is across the lane divider for a mere four seconds and traveling at 40 miles per hour, the vehicle has traveled 240 feet or 80 yards. This is simple arithmetic, not quantum physics or rocket science. Where would the majority draw the line? In another unbelievable sentence, the majority states, “We construe Smith, we believe properly and consistently with the supreme court’s intent, to apply to situations like the one presented to the court in that case, where the driver of the vehicle actually drives for some reasonably appreciable distance in more than one lane of traffic.” (Emphasis in original and added.) 406 Ill. App. 3d at 214. I hate to be flip, but the majority invites it. This opinion would not stand up to a Vinny Gambini cross-examination. I can only think of that renowned trial lawyer’s cross-examination of witness Mr. Tipton regarding the time it took to cook grits on Tipton’s stove. Vinny Gambini would undoubtedly ask whether the law of physics cease to exist on highways in the Third District allowing a vehicle to travel for four seconds with its tires in two separate lanes and yet not be “actually driving in more than one lane of traffic.” Was this a magic pickup truck? Did the defendant buy his truck from the same guy that sold Jack his beanstalk beans? If the defendant was not actually driving in more than one lane of traffic, what was he “actually” doing? Just what is a reasonably appreciable distance? How does an officer decide? The majority leaves no workable rule. I could write a four-volume dissent on this case, picking apart one silly sentence after another in the majority opinion. However, I will stop here. The thrust of the majority opinion is that the majority believes that police should not be able to stop people for minor traffic violations. I suppose we all feel that way when we are stopped for one. This is the appellate court; we do not get to rewrite the law based upon our feelings about it. The supreme court and the legislature have that power. We do not. Clearly, the officer had probable cause to stop the defendant for improper lane usage. The supreme court’s decision in Smith is not ambiguous. Whether the defendant inadvertently or intentionally swerved twice across the lane divider lane is irrelevant. The majority opinion stands the law on its head and creates a totally unworkable scheme for traffic law enforcement. Do we apply the same analysis to speeding? Must one speed for a “reasonably appreciable distance” to violate speed laws? Illinois has five appellate courts and one supreme court. Our supreme court does not have the resources to correct every wrongly decided appellate decision. The majority undoubtedly is banking on the fact that the court will have more pressing matters before it and not grant a petition for leave to appeal on this matter. With all due respect, the majority opinion is nonsense, plain and simple. Even worse, it endangers the lives of the motoring public by limiting the ability of police officers to stop erratic drivers. I dissent.